## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

United States of America,                    Case No. 15-cv-2705 (JRT/TNL)

               Plaintiff,

v.                                           **REPORT & RECOMMENDATION**

Page Edmunds III, and
Page Edmunds LLC, doing business as
Renter's Avenue,

               Defendants.

---

Bahram Samie, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Plaintiff); and

Page Edmunds, III, Jazminu 3, Gineitiskiu km, Buivydiskiu ap-ke, Vilniaus r. 14159, Lithuania (pro se Defendant).

---

### I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Page Edmunds, III's ("Defendant") "Despositive [sic] Motion to Dismiss." (ECF No. 35.)  This motion has been referred to the undersigned magistrate judge for a report and recommendation to the district court, the Honorable John R. Tunheim, Chief District Judge of the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and Local Rule 72.1.

A hearing was held.  Bahram Samie appeared on behalf of Plaintiff United States of America.  (ECF No. 48.)  Defendant appeared pro se via telephone.  (ECF No. 48.) Based upon the record, memoranda, and the proceedings herein, **IT IS HEREBY**

1

**RECOMMENDED** that Defendant's "Dispositive [sic] Motion to Dismiss" (ECF No. 35) be **DENIED** as set forth herein.

## II. BACKGROUND[1]

Plaintiff brings this action pursuant to the Fair Housing Act (the "FHA"), 42 U.S.C. § 3601 *et seq.*, against Defendant Page Edmunds III ("Defendant").[2] (Compl. ¶ 1, ECF No. 1.) This matter arose from a complaint filed with the Department of Housing and Urban Development ("HUD") alleging Defendant discriminated on the basis of race and national origin by denying a Hmong family's rental application. (*See generally* Compl.)

In March 2014, Thomas Lee saw an advertisement for the rental of a three-bedroom townhouse in Champlin, Minnesota. (Compl. ¶¶ 9, 13.) Defendant's property management company, for which Defendant is the primary member and agent, was listed as the licensed property manager. (Compl. ¶¶ 10-11, 13.) Lee arranged to meet with Defendant to view the townhouse. (Compl. ¶ 15.)

Lee, his mother (Cice Ayang), his minor half-sister, and his minor daughter as well as two of his half-sister's friends met with Defendant at the townhouse. (Compl. ¶¶ 12, 16.) When Defendant asked who would live at the townhouse, "Lee replied that he would live there along with his mother, his . . . half-sister, and his . . . daughter." (Compl. ¶ 16.) At the showing, Lee expressed interest in renting the townhouse,

---

[1] "In analyzing a motion to dismiss, a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party." *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014); *see also Rasmusson v. Chisago Cnty.*, 991 F. Supp. 2d 1065, 1070 (D. Minn. 2014) ("When evaluating a motion to dismiss, the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to Plaintiff.").

[2] On May 12, 2016, the Clerk of Court entered default against Defendant Page Edmunds LLC, doing business as Renter's Avenue. (ECF No. 43.)

completed a rental application, and paid application fees for himself and his mother. (Compl. ¶ 17.)

Over approximately the next week, Lee and Defendant communicated back and forth regarding (1) credit reports for Lee and his mother, and (2) who would be living at the townhouse. (*See* Compl. ¶¶ 19–25.) Lee consistently maintained that the prospective occupants were himself, his mother, his half-sister, and his daughter. (Compl. ¶¶ 22, 26.) Lee had difficulty obtaining his mother's credit report from the website identified by Defendant. (Compl. ¶ 20; *see* Compl. ¶¶ 26, 30.) Lee obtained and submitted a credit report from TransUnion, but Defendant requested another report because the Trans Union report did not contain a credit score. (Compl. ¶ 20.) Still having issues with the website Defendant suggested, Lee offered to provide his mother's information so that Defendant could check her credit. (Compl. ¶¶ 24, 26.) Defendant responded that the website should work as long as Lee's mother had a bank account. (Compl. ¶ 29.) Subsequently, Defendant suggested that Lee use another online credit reporting service. (Compl. ¶ 31.) Lee obtained, and emailed to Defendant, Ayang's credit report from Experian showing Ayang's name and credit score of 761. (Compl. ¶ 32.) Lee's credit report showed a credit score of 725. (Compl. ¶ 19.)

Later that day, Defendant denied the rental application because both Lee and Ayang would have to sign the lease, and Ayang appeared "to have limited English skills." (Compl. ¶ 33.) Defendant reasoned that a translator was costly and the contract "must be translated to [Ayang's] native language . . . [or] she could easily break the lease." (Compl. ¶ 33.) Lee asked Defendant whether the application was denied because Ayang

spoke limited English and emphasized both he and Ayang had good credit scores. (Compl. ¶ 34.)  Defendant maintained that "[p]eople with limited English skills can break contracts . . . if not translated . . . [and a translator costs] $500."  (Compl. ¶ 35.) Defendant reasoned that he was "not required to enter into a legal contract with a party that may later claim they didn't understand it."  (Compl. ¶ 40.)

Lee emailed Defendant stating he "submitted an inquiry to HUD" and would "wait to hear back from HUD to see if this discrimination based on national origin is legal in the state of MN."  (Compl. ¶ 38.)  Fifteen minutes later, Defendant wrote back—this time, denying Lee and approving Ayang.  (Compl. ¶¶ 38, 39.)  Defendant wrote that Lee was being "uncooperative" and "too difficult to work with" and, later, threatened to have Lee sanctioned for failing to disclose his real estate license or for impersonating a licensee.  (Compl. ¶¶ 40, 44.)  Defendant also reasoned that the application was denied because he "had to make repeated requests regarding who the intended occupants would be and for Ayang's credit data."  (Compl. ¶ 42.)

Lee "stated that he provided the names of all prospective occupants on two occasions, after each time [Defendant] requested the information."  (Compl. ¶ 43.)  Lee accused Defendant of discrimination based on his "assumption that Ayang [did] not know how to read or write."  (Compl. ¶ 43.)  Lee accused Defendant of "never ask[ing] if Ayang could speak or write English, never offer[ing] them the option to pay a translation fee before rejecting them, and inflat[ing] the translation fee estimate to discourage his family from renting there."  (Compl. ¶ 43.)

Plaintiff alleges that Defendant discriminated on the basis of race and national origin in violation of the FHA, 42 U.S.C. §§ 3604(a) and (c), and retaliated against Lee on the basis of his having engaged in protected activity in violation of 42 U.S.C. § 3617. (Compl. ¶¶ 2, 56-58.)  Defendant has moved to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).  (Def.'s Mem. in Supp., ECF No. 35.)  Plaintiff opposes the 12(b)(6) challenges.  (Pl.'s Mem in Opp'n, ECF No. 39.)

### III. MOTION TO DISMISS

#### A.  Consideration of Additional Materials

The first question is whether the Court will consider Defendant's supplementary materials in addition to the Complaint.  Defendant has included additional information with his motion to dismiss, including, among other things, tenant placement data (ECF No. 35 at 6-7), and additional factual contentions (*see, e.g.*, ECF No. 44 at 2-3). When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, the Court assumes the facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the Plaintiff.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In addition, "the court generally must ignore materials outside the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, the motion must be treated as a motion for summary judgment.  Fed. R. Civ. P. 12(d).  The Court, however, may consider exhibits attached to the complaint and documents that are necessarily embraced by the complaint without converting the motion

5

into one for summary judgment.  *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).  "[T]he court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion."  *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003) (quotation omitted).

The Court exercises its discretion not to consider Defendant's supplemental materials.  The materials submitted by Defendant are not embraced by the Complaint.  Rather, the materials submitted by Defendant go to the merits of the parties' dispute.  Consideration of such information is both premature and prejudicial to Plaintiff because Plaintiff has not had an opportunity to conduct discovery.

Under Fed. R. Civ. P. 56(a), summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  "As a general rule, summary judgment is proper only after the nonmovant has had adequate time for discovery."  *Hamilton v. Bangs, McCullen, Butler, Foye & Simmons, L.L.P.*, 687 F.3d 1045, 1049 (8th Cir. 2012) (quotation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ry. Labor Execs.' Ass'n v. Chicago & N. W. Transp. Co.*, 692 F. Supp. 1066, 1067 (D. Minn. 1988) (summary judgment is premature where defendant had not answered discovery requests).  Plaintiff has not been able to conduct discovery because of Defendant's lack of cooperation.  "If the failure to allow discovery deprives the nonmovant of a fair chance to respond to the motion, . . . summary judgment is not proper. . . ."  *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d

524, 530 (8th Cir. 1999).   Accordingly, the Court will not consider Defendant's additional information at this time.

### B. Legal Standard

"To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).   "[A]lthough a complaint need not contain 'detailed factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (quoting *Twombly*, 550 U.S. at 555).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).   Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the

complainant." *Raynor*, 690 F.3d at 955; *accord Martin*, 752 F.3d at 727; *Rasmusson*, 991 F. Supp. 2d at 1070.

### C. Discrimination Claims

Plaintiff brought claims against Defendant under 42 U.S.C. §§ 3604(a) and (c). (Compl. ¶¶ 2, 56, 57.)  Section 3604(a) of the FHA provides that it is unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."  42 U.S.C. § 3604(a); *see* 24 C.F.R. § 100.60(b)(2) ("Prohibited actions under this section include, but are not limited to . . . [r]efusing to sell or rent a dwelling to, or to negotiate for the sale or rental of a dwelling with, any person because of race, color, religion, sex, handicap, familial status, or national origin.").  To establish a prima facie case of discrimination under 42 U.S.C. § 3604(a), "the plaintiff must show the following: (1) he was a member of a protected class; (2) he applied for and was qualified to rent the Property; (3) he was rejected; and (4) the Property remained available thereafter." *Lowman v. Platinum Prop. Mgmt. Servs., Inc.*, 166 F. Supp. 3d 1356, 1360 (N.D. Ga. 2016).  Section 3604(c) of the FHA makes it unlawful to:

> make . . . or cause to be made . . . any . . . statement . . . with respect to the . . . rental of a dwelling that indicates any preference, limitation, or discrimination on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604(c); *see* 24 C.F.R. § 100.75.  This includes "all written or oral . . . statements by a person engaged in the . . . rental of a dwelling." 24 C.F.R. § 100.75(b); *accord Campbell v. Robb*, 162 F. App'x 460, 466 (6th Cir. 2006).  "To support a discrimination claim under Section 3604(c), the race-related statement must be related to the decisional process in an adverse manner."  *Grover-Tsimi v. Millpond Partners*, No. 09-cv-3544 (JRT/SRN), 2010 WL 4979092, at *7 (D. Minn. Oct. 18, 2010) (citing *Harris v. Itzhaki*, 183 F.3d 1043, 1055 (9th Cir. 1999)), *adopting report and recommendation*, 2010 WL 4979082 (D. Minn. Dec. 2, 2010).

All four members of the Lee family are of Hmong descent.  (Compl. ¶ 12.)  Lee completed a rental application, paying the application fees for himself and Ayang, and both Lee and Ayang were qualified to rent the subject property based on their credit scores and income level.  (Compl. ¶¶ 17, 19, 32, 34.)  Plaintiff alleges that Defendant denied the Lee family's rental application because he believed Ayang could not speak or understand English due to her race and/or national origin.  (Compl. ¶¶ 33, 43.)  The subject property remained available thereafter, though it was eventually rented to a personal friend of Defendant who is part Caucasian and part American Indian.  (Compl. ¶ 48.)  And, during the decisional process, Defendant made race-related statements when he denied the Lee family's rental application and expressed a discriminatory bias against tenants who had limited English skills.  (Compl. ¶¶ 33, 46.)  Accepting the factual allegations as true and construing all reasonable inferences in favor of Plaintiff, Plaintiff has stated a claim for violations of 42 U.S.C. §§ 3604(a) and (c).  Therefore, the Court

recommends that Defendant's motion be denied with respect to Plaintiff's claims pursuant to 42 U.S.C. §§ 3604(a) and (c).

### D. Retaliation Claim

Plaintiff has also brought a retaliation claim against Defendant under 42 U.S.C. § 3617.  (Compl. ¶¶ 2, 58.)  The FHA prohibits retaliation for pursuing the rights under the FHA.  *Gallagher v. Magner*, 619 F.3d 823, 838 (8th Cir. 2010).  Under 42 U.S.C. § 3617,

> [i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

"This section reaches all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws."  *Campbell*, 162 F. App'x at 473 (quotation omitted).   Unlawful conduct under this section includes "[r]etaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act."   24 C.F.R. § 100.400(c)(5); *see Campbell*, 162 F. App'x at 473.  To state a claim for retaliation under the FHA, Plaintiff must show: (1) Lee engaged in a protected activity; (2) Defendant was aware of the activity; (3) Defendant took adverse action against Lee; and (4) there is a causal link between the adverse action and the protected activity.   *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 54 (2d Cir. 2002), *cited in Gallagher*, 619 F.3d at 838.

Plaintiff alleges Defendant retaliated against Lee for engaging in protected activity, namely, reporting discrimination.  (Compl. ¶ 58.)  After Defendant denied the rental application, Lee emailed Defendant stating he "submitted an inquiry to HUD" and would "wait to hear back from HUD to see if this discrimination based on national origin is legal in the state of MN."  (Compl. ¶ 38.)  Fifteen minutes later, Defendant wrote back, denying Lee and approving Ayang.  (Compl. ¶¶ 38, 39.)  Defendant wrote that Lee was being "uncooperative" and "too difficult to work with" and threatened to have Lee sanctioned for failing to disclose his real estate license or for impersonating a licensee. (Compl. ¶¶ 40, 44.) Taking the allegations in the Complaint as true, these allegations show that Lee engaged in protected activity by submitting an inquiry to HUD; Defendant was aware of this protected activity; and, shortly thereafter, Defendant denied Lee's rental application.   Based on the quickness with which Defendant denied Lee's application after being informed of the HUD inquiry, and given the alleged prior statements and actions of Defendant, it is reasonable to infer that there was a causal link between Lee's inquiry and Defendant's denial of his rental application.  Therefore, the Court recommends that Defendant's motion be denied with respect to 42 U.S.C. § 3617.

## IV. DEFENDANT ON NOTICE

In closing, the Court has previously expressed its concerns over Defendant's failure to abide by this Court's orders.  (*See* Order, Dec. 1, 2015, ECF No. 23; Order, May 12, 2016, ECF No. 42.)  Notwithstanding its untimeliness, the Court has interpreted Defendant's motion to dismiss as indicating a present desire to contest and participate in this action and, because the law does not favor defaults, considered the motion on the

merits.  Similarly, in light of Defendant's pro se status and apparent renewed interest in participating, the Court will not recommend that default be entered against Defendant at this time despite having sufficient justification for doing so.

Going forward, the Court continues to have serious reservations concerning Defendant's actions.  The Court again emphasizes that, while pro se litigants are accorded a certain degree of latitude, Defendant's pro se status does not excuse him from complying with this Court's orders as well as the Federal Rules of Civil Procedure and the Court's Local Rules.  *See Bennett v. Dr. Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002) (pro se status does not entitle litigant to disregard Federal Rules of Civil Procedure or court's local rules); *Oprenchak v. Am. Family Mut. Ins. Co.*, No. 11-cv-425 (PJS/TNL), 2012 WL 1247216, at *15 (D. Minn. Mar. 26, 2012) ("Plaintiff's pro se status does not excuse him from following the Federal Rules of Civil Procedure and Local Rules of this Court."), *adopting report and recommendation*, 2012 WL 1253011 (D. Minn. Apr. 13, 2012).  The Court will not look favorably on future last-minute filings and filings whose sole purpose appears to be the further delay of the resolution of this matter.  The Court cannot force Defendant to defend this action, but it will not hesitate to act when a party's actions undermine the judicial process through willful violations of court orders and rules, contumacious conduct, and/or intentional delay.  *See, e.g.*, *Gold's Gym Licensing, LLC v. K-Pro Mktg. Group, Inc.*, No. 09-cv-1211 (PJS/RLE), 2010 WL 391310, at *3 (D. Minn. Jan. 26, 2010); *Sierra Petroleum Co.*, *Inc. v. YSM, Inc.*, No. 07-cv-1526 (PJS/RLE), 2008 WL 189957, at *5 (D. Minn. Jan. 2, 2008), *adopting report and recommendation as modified*, 2008 WL 508919 (D. Minn. Jan. 31, 2008);

12

*Transclean Corp. v. Bill Clark Oil Co.*, No. 02-cv-1138 (PAM/RLE), 2004 WL 2730101, at *2 (D. Minn. Nov. 18, 2004).

Further, Defendant is reminded of his need to update the Court should his contact information change in the future. *See* Fed. R. Civ. P. 11(a) (requiring every pleading, motion, and other paper to be signed and include "the signer's address, e-mail address, and telephone number"). As stated at the hearing, Defendant must provide *written notice* of any such changes *before* they occur.

Defendant would do well to heed these warnings and communicate and cooperate reasonably with opposing counsel from this point on. Equally, the Court expects nothing less from opposing counsel. Defendant is on notice that this is his last chance. Failure to comply with any provision of this Order or any other prior or future Order, or applicable law or rule, shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

[Continued on next page.]

## V. RECOMMENDATION

Based upon the file, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that Defendant's "Despositive [sic] Motion to Dismiss" (ECF. No. 35) be **DENIED** as set forth above.  The Clerk of Court shall provide Defendant with a copy of the Pro Se Civil Guidebook.

Dated: December 6, 2016                            */s/ Tony N. Leung*
                                                   Tony N. Leung
                                                   United States Magistrate Judge
                                                   for the District of Minnesota

                                                   *United States of America v. Page*
                                                   *Edmunds III et al.*
                                                   Case No. 15-cv-2705 (JRT/TNL)

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.